UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARCUS JOHNSON,

    Plaintiff,

vs.                          Case No.:

BOTTLING GROUP, LLC,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MARCUS JOHNSON, by and through his undersigned counsel brings this action against Defendant, BOTTLING GROUP, LLC, and states as follows:

## INTRODUCTION

This is an action for damages and all available relief based on race and color discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a (collectively "Title VII"), and the Florida Civil Rights Act §§ 760.01-760.11, Florida Statutes ("FCRA"). As a result and for the violation of Plaintiff's rights to be free from racial discrimination and to recover front pay, back pay, an equal amount as liquidated damages, reinstatement, lost benefits, compensatory damages, emotional distress damages, pain and suffering,

1

injunctive relief, reasonable attorneys' fees and costs and any other relief to which the Plaintiff is entitled, including but not limited to, equitable relief.

## JURISDICTION AND VENUE

1. Jurisdiction of this matter arises pursuant to 28 U.S.C. §1331 with federal questions involving Title VII. An express grant of federal court jurisdiction over this federal claim is found in Title VII at 42 U.S.C.§2000e-5(f)(3).

2. This Court has supplemental jurisdiction over Plaintiff's state law claims.

3. This Court has jurisdiction over Plaintiffs' claims because at all times material to this Complaint, Plaintiffs worked for Defendant in Winter Haven, Polk County, Florida.

4. The illegal conduct occurred within the judicial district in and for this District.

5. Plaintiff timely dually-filed his Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations on June 28, 2018.

6. On February 18, 2021, the EEOC issued its right-to-sue letter. Therefore, this Complaint is being filed within 90 days of Plaintiffs receiving their right-to-sue letter.

## PARTIES

7. Plaintiff is an adult individual who resides in Panama City, Bay County, Florida.

8. At all times material hereto, Plaintiff worked for Defendant in Winter Haven, Polk County, Florida.

9. At all times material hereto, Plaintiff worked for Defendant as a Salesman.

10. Defendant, BOTTLING GROUP, LLC is and was, at all relevant times, a Foreign Liability Company, operating in Polk County, Florida and is within the jurisdiction of this Court and this District.

11. Defendant was an employer as defined by the laws under which this action is brought and employs greater than 15 employees.

## STATUTORY PREREQUISITES

12. Plaintiff is an African American male individual who suffered discrimination based on his race and color.

13. Plaintiff is a member of a class of individuals protected by Title VII and the FCRA.

14. Plaintiff was qualified for his position of employment as a Salesman.

15. The Defendant meets the statutory criteria for coverage as an "employer" under Title VII and the FCRA.

16. Plaintiff meets the statutory criteria for coverage as an "employee" under Title VII and the FCRA.

17. Plaintiff timely dually-filed his Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations on June 28, 2018.

18. On February 18, 2021, the EEOC issued its right-to-sue letter. Therefore, this Complaint is being filed within 90 days of Plaintiffs receiving their right-to-sue letter.

19. Accordingly, Plaintiff has complied with all other requirements and all other prerequisites prior to bringing this lawsuit.

## FACTS

20. Plaintiff was employed by Defendant from approximately July 23, 2013 until August 31, 2018.

21. At all times material, Plaintiff was employed as a Salesman.

22. Plaintiff's performance earned him numerous accolades while employed with Defendant including awards, certificates, bonuses and promotions.

23. Plaintiff won Defendant's "Best of the Best" award consecutively in 2016 and 2017.

24. In 2017, Plaintiff was named Defendant's top Salesman of the Southeast Region out of more than 700 employees and earned an award from Defendant in this regard.

25. Part of Plaintiff's duties as a Salesman was to put up displays featuring Defendant's beverage products at various stores called a route.

26. Beginning in or around July 2017, a new Publix store was added to Plaintiff's route.

27. According to Publix policy, when a new vendor was "receiving" a new display that Salesman would need to take down the old display before the new display was put up displaying the new product.

28. It was not policy for the Salesmen to have to take down their own display for the next Salesman to put up their display.

29. However, one of the Managers at the Publix Store, Kyle Kilburn (Caucasian) began requiring Plaintiff to take down his displays despite this being the "receiving" Salesman's responsibility.

30. Mr. Kilburn would only request this of Plaintiff and not from the Caucasian Salesmen.

31. Around this time frame, Plaintiff learned that another of Defendant's employees (African American) complained of similar disparate

treatment by Mr. Kilburn, and that employee was demoted in retaliation for his complaints.

32. As such, Plaintiff continued taking down his displays for four weeks in order to avoid any issues with Kilburn

33. On or around August 23, 2017, Plaintiff questioned Kilburn about this added responsibility and Kilburn became irate and threated to call Plaintiff's supervisor to falsely accuse Plaintiff of not correctly performing his job duties.

34. The next day, on August 24, 2017, Plaintiff contacted his direct supervisor, Eddie Marine, and met with the Publix Store Manager to report the disparate treatment to which he was being subjected by Kilburn.

35. However, nothing was done, and Kilburn's treatment of Plaintiff continued.

36. Shortly thereafter Plaintiff learned from a Salesman who worked for Frito-Lay that when asked about why he didn't watch over other Salesmen (Caucasian), Kilburn stated " I don't need to check up on them, it's just certain ones I gotta keep my eye on" and proceeded to identify those as the prior employee (African-American) who complained about Kilburn's behavior and Plaintiff stating "they can't be trusted."

37. Upon learning of Mr. Kilburn's discriminatory comments, Plaintiff called Publix Lakeland Branch's Corporate Office and once again reported Kilburn's actions.

38. Plaintiff then reported this to his direct supervisor, Mr. Marine, who immediately instructed Plaintiff to call Publix's corporate office and retract his complaint.

39. Mr. Marine told Plaintiff if he went through with his complaint against Mr. Kilburn he would be "targeted" and "kicked out" of the Publix store.

40. Fearing retaliation, Plaintiff did as his supervisor instructed, and retracted his second complaint against Kilburn.

41. In September of 2017, Plaintiff's fears of retaliation were confirmed when Kilburn stopped allowing Plaintiff to look at orders for products that Plaintiff needed to deliver to the Publix stores.

42. Not being able to see the orders would result in Plaintiff not being made aware whether the Publix store was low or sold out of any particular beverage product of Defendant which Plaintiff would deliver and stock.

43. Kilburn was aware that not knowing when to refill or stock up on product would result in lower sales for Plaintiff.

44. In October of 2017, Kilburn falsely accused Plaintiff of not fulfilling an order in the store's lobby and of leaving certain products on pallets.

45. Plaintiff spoke with Kilburn and told him he did not leave the products on the pallets and the lobby was indeed stocked and reiterated this was a false accusation.

46. Kilburn still called one of Plaintiff's supervisors and reported the false accusations.

47. After this incident, Plaintiff requested another meeting with Defendant's upper management and Kilburn.

48. Plaintiff met once again with Marine as well as Marine's supervisor.

49. During that meeting, management acknowledged Kilburn's disparate treatment was racially motivated; however, they asked Plaintiff to not to worry about Kilburn and to not let him get to Plaintiff.

50. Thereafter, Plaintiff went on FMLA leave for approximately 4 weeks.

51. On January 24, 2018, Plaintiff was asked by Kilburn to assist with the Coca-Cola salesman to take down their display even though Plaintiff was working on another part of the store putting up his own display.

52. When Plaintiff questioned Kilburn about his behavior being racially motived, Kilburn responded "well that's just something you're going to have to deal with."  Kilburn also threated to kick Plaintiff out of the Publix store.

53. Plaintiff reported the incident to Defendant's Unit Manager, Anthony "Tony" Allen and Marine.

54. Although Defendant's Unit Manager assured Plaintiff the ongoing issues would be addressed with Kilburn's District Manager, again, nothing was done despite Plaintiff's now numerous complaints.

55. Plaintiff had no choice but to again reach out to Publix's Corporate office on January 24, 2018 and report Kilburn's ongoing behavior.

56. On January 25, 2018, Plaintiff also contacted Defendant's "Speak Up Line," to report Kilburn's racist behavior.

57. On January 29, 2019, Plaintiff was called into a meeting with Marine, Allen, Kilburn, and the Publix Store Manager.

58. Although management admitted at that time of this meeting that Kilburn's behavior was "inappropriate," Kilburn responded by saying he could handle things better but he "didn't have to like [Plaintiff]."

59. Thereafter, Plaintiff began asking Defendant's Management to be transferred to another route and/or another store so he no longer would need to be subjected to Kilburn's' racists behavior towards him and what would now for sure be retaliatory behavior.

60. Despite his requests to Defendant's management and Defendant's Human Resources Department, Plaintiff was denied the change of store.

9

61. Several Caucasian Salesman of Defendant had previously requested to be re-routed to other stores and had their requests granted.

62. Defendant denied Plaintiff's re-route requests despite knowing of his complaints of race discrimination.

63. On April 3, 2018, Plaintiff was called into a meeting with his upper management and Defendant's Human Resources Department.

64. Plaintiff was told that he was being "barred" from all the Publix stores in the district for alleged "poor performance."

65. To the contrary, despite the race discrimination to which Plaintiff was subjected, his job performance remained outstanding and his sales continued to increase.

66. At the April 3rd meeting, Plaintiff was given the option to take unpaid leave or take a "re-set position."

67. A "re-set position" would mean, less pay and less hours. Essentially, Plaintiff faced being placed on unpaid leave indefinitely or being demoted.

68. Plaintiff viewed Defendant's actions as retaliation as it was clearly an adverse employment action. Thus, Plaintiff had no doubt that Defendant would further retaliate against him if he accepted this re-set position, and therefore, Plaintiff was left with no choice but to resign from his employment with Defendant on August 31, 2018.

## COUNT I
## RACE DISCRIMINATION UNDER TITLE VII

69. Plaintiffs reincorporate and adopt all allegations contained within paragraphs 1 through 68, above.

70. Defendant discriminated against Plaintiff based on his race.

71. Defendant engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff as set forth above.

72. Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

73. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering;

  e. Injunctive relief;

  f. Prejudgment interest;

  g. Costs and attorney's fees; and

  h. Such other relief as the Court may deem just and proper.

## COUNT II
## RETLIATION UNDER TITLE VII

74. Plaintiffs reincorporate and adopt all allegations contained within paragraphs 1 through 68, above.

75. Defendant retaliated against Plaintiff because of his complaints about race discrimination.

76. Plaintiff engaged in a protected activity by making numerous verbal and written complaints to Defendant regarding race discrimination.

77. Plaintiff suffered an adverse action after reporting to Defendant the unlawful conduct.

78. Defendant engaged in unlawful employment practices prohibited by Title VII by retaliating against Plaintiff as set forth above.

79. Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

80. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and

continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering;

e. Injunctive relief;

f. Prejudgment interest;

g. Costs and attorney's fees; and

h. Such other relief as the Court may deem just and proper.

## COUNT III
## RACE DISCRIMINATION IN VIOLATION OF FCRA

81. Plaintiffs reincorporate and adopt all allegations contained within paragraphs 1 through 68, above.

82. Plaintiff brings this cause of action pursuant to Section 760.07, F.S.

83. Defendant discriminated against Plaintiff based on his race.

84. Defendant engaged in unlawful employment practices prohibited by the FCRA by discriminating against Plaintiff as set forth above.

85. Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

86. At all material times, Plaintiff was qualified to perform his job duties.

87. Defendant discriminated against Plaintiff because of his race.

88. Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

89. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering;

  e. Injunctive relief;

  f. Prejudgment interest;

  g. Costs and attorney's fees; and

  h. Such other relief as the Court may deem just and proper.

## COUNT IV
## RETALIATION IN VIOLATION OF FCRA

90. Plaintiffs reincorporate and adopt all allegations contained within paragraphs 1 through 68, above.

91. Plaintiff brings this cause of action pursuant to Section 760.07, F.S.

92. At all material times, Plaintiff was qualified to perform his job duties.

93. Defendant retaliated against Plaintiff because of his complaints about race discrimination.

94. Plaintiff engaged in a protected activity by making numerous verbal and written complaints to Defendant regarding race discrimination

95. Defendant engaged in unlawful employment practices prohibited by the FCRA by retaliating against Plaintiff as set forth above.

96. The above retaliation was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to

suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

<blockquote>

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering;

e. Injunctive relief;

f. Prejudgment interest;

g. Costs and attorney's fees; and

h. Such other relief as the Court may deem just and proper.

</blockquote>

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

Dated this 11th day of May, 2021.

> Respectfully submitted,
>
> ***/s/ Anthony J. Hall***
> Anthony J. Hall, Esq.
> FL Bar No. 40924
> THE LEACH FIRM, P.A.

16

631 S. Orlando Avenue, Suite 300
Winter Park, Florida 32789
Telephone: (407) 574-4999
Facsimile: (321) 594-7316
Email: ahall@theleachfirm.com
Email: npacheco@theleachfirm.com

***Attorneys for Plaintiff***